# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| WILLIAM E. SMITH, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | No. 09-CV-3065-DEO <br><br><br> ORDER |

**I. FACTS** . . . . . . . . . . . . . . . . . . . . . . . . 1

**II. DISCUSSION** . . . . . . . . . . . . . . . . . . . . . 5

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . 14

William Edward Smith seeks disability insurance benefits (DIB) and supplemental security income (SSI) benefits. The Administrative Law Judge's February 23, 2009, decision found him ineligible. This Court reverses the decision of the ALJ and awards benefits.

## I. FACTS

Mr. Smith suffers from severe lower back pain and has been diagnosed with degenerative disc disease of the lumbar spine.[1] Smith's pain likely traces its origin to a work-

---

[1] "The gradual deterioration of the disc between the vertebrae is referred to as degenerative disc disease." MedicineNet.com, http://www.medicinenet.com/degenerative_disc/page2.htm. "Disc degeneration that affects the lumbar spine is referred to as lumbago[,] [which] causes pain localized to the low back and is common in older people." Id.

related injury that occurred in 1986 when he fell from a height of about 10-15 feet, landing in a seated position on his posterior causing severe pain in his back.  He has suffered low back pain of increasing intensity ever since.

Born April 27, 1961, Smith is now 50 years old.  He has a tenth grade education and has worked as a mechanic, farmhand, and convenience store clerk.  Smith's impairments include obesity,[2] chronic obstructive pulmonary disease (COPD),[3] and, as noted above, degenerative disc disease of the lumbar spine.[4]  Smith cannot afford health insurance and, as

---

[2] "The definition of obesity varies depending on what one reads, but in general, it is a chronic condition defined by an excess amount body fat."  MedicineNet.com, http://www.medicinenet.com/obesity_weight_loss/article.htm.

[3] "Chronic obstructive pulmonary disease (COPD) is comprised primarily of three related conditions – chronic bronchitis, chronic asthma, and emphysema." MedicineNet.com, http://www.medicinenet.com/chronic_obstructive_pulmonary_disease_copd/article.htm.  "In each condition there is chronic obstruction of the flow of air through the airways and out of the lungs, and the obstruction generally is permanent and may be progressive over time."  Id.

[4] Unfortunately, this list is not exhaustive of Smith's impairments.  Smith also suffers from Graves disease (an autoimmune disorder that leads to overactivity of the thyroid gland (hyperthyroidism)), osteoarthritis (a type of arthritis that is caused by the breakdown and eventual loss of the cartilage of one or more joints), leukopenia (low white blood cell count), and migraine headaches, among other impairments. See, e.g., Tr. 333, 376.  Smith takes thyroid medication for his Graves disease and has been prescribed a variety of medications to treat his migraines.

a consequence, has received relatively little medical care for these and other serious medical conditions. See, e.g., Tr. 311, 375. He walks with a cane and has been prescribed a variety of pain medications for his back pain, though he mainly relies on pharmaceutical samples from his doctors and over-the-counter medications due to his financial condition. Smith's back pain is ever-present and at times severe. The pain affects his right leg, causing him to be unsteady; he frequently loses control of his right leg and it buckles, causing him to fall. The pain also interferes with his sleep. For everyday living expenses, he and his family rely on government assistance, including food stamps.

Mr. Smith filed an application for SSI on June 23, 2006 (Tr. 22), and an application for DIB on July 31, 2006 (Tr. 229, 255), claiming in both to be disabled beginning April 1, 2006.[5] The Social Security Administration denied Smith's applications initially and upon reconsideration. Tr. 187, 193. The ALJ[6] heard Smith's claim on February 10, 2009. Tr. 22.

---

[5] Regarding his claim for DIB, Smith remains insured through December 31, 2011, and must therefore establish disability on or before that date to be entitled to DIB. Tr. 22-23, 24. To be eligible for SSI benefits, Smith must establish that he was disabled while his application was pending. 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330 and 416.335.

[6] The Hon. John E. Sandbothe.

3

The ALJ evaluated Smith's claim utilizing the familiar five-step sequential evaluation process outlined in 20 C.F.R § 404.1520 and § 416.920.2. Tr. 23-24. The ALJ found Smith had one or more severe impairments, including degenerative lumbar disk disease, obesity, and COPD. Tr. 24. The ALJ found these impairments did not meet or equal an impairment listed under 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 25. To determine whether Smith could return to his past work or any other work, the ALJ determined Smith's residual functional capacity, finding:

> [Smith] has the residual functional capacity [(RFC)] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) such that he can lift twenty pounds occasionally, ten pounds frequently; he can occasionally balance, stoop, crouch, kneel, crawl, and climb; and no extremes of heat, cold, humidity, dust, or fumes.

Tr. 25. The ALJ determined that, given Smith's RFC, he was able to perform his past relevant work as a cashier/checker, farm laborer, and mechanic. Tr. 29. As a result, the ALJ determined Smith was not disabled and not entitled to benefits. Tr. 29. Mr. Smith timely requested review (Tr. 16), and on August 21, 2009, the Appeals Council denied review (Tr. 11). Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. DISCUSSION

The ALJ's decision must be affirmed if it conforms to the law and is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); see also Kluesner v. Astrue, 607 F.3d 533, 536 (8th Cir. 2010). "'Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion.'" Kluesner, 607 F.3d at 536 (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). This standard of review requires the reviewing court to consider both evidence that supports the ALJ's decision as well as evidence that detracts from it. Kluesner, 607 F.3d at 536. However, the court may not reverse the ALJ's decision simply because substantial evidence exists in the record that would have supported a different outcome, or because the court would have decided the case differently. Id.; Haley v. Massanari, 258 F.3d 742, 746 (8th Cir. 2001) (citations omitted). Rather, "'[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). In short, a reviewing court should neither consider a claim de novo, nor abdicate its duty to carefully

analyze the entire record.  Wilcutts v. Apfel, 143 F.3d 1134, 1136-37 (8th Cir. 1998) (citation omitted).

The Court has considered all of the record evidence — both that which supports the ALJ's decision and that which detracts from it — however only that evidence which the Court considers most material will be discussed in this Order.  As explained below in further detail, the evidence in this record is fully favorable to a finding of disability.

In the opinion of the Court, this case turns in large part on the proper evaluation of the clinical notes, objective findings, and medical opinions of examining consultative physician, Dr. Thomas G. Graham, M.D., concerning the functional effects of Smith's degenerative disc disease of the lumbar spine and other impairments.[7]  Dr. Graham thoroughly examined Smith on October 10, 2006.  Tr. 332-36.  He noted Smith experiences severe back pain extending from his lower back into his legs, particularly his right leg, causing unsteadiness and frequent falls.  Tr. 332-33.  In fact, Smith had fallen down some steps the day before, and Dr. Graham

---

[7] Condon's brief provides "[t]he primary care physician in this case is Dr. Birkett, MD. . . .  Ms. Condon is [also] being followed . . . by Dr. Burdt."  Docket No. 9 at 6.  However, as the Government correctly notes, "[t]he medical evidence of record fails to reveal appointments with Dr. Birkett during the relevant time period."  Docket No. 10 at 13.

6

observed "[h]e suffered a severe bruise to his left chest and also to his left ear and left shoulder[,] [t]he bruise on his left chest and shoulder measures 26 cm in length." Tr. 333. Upon examination, Smith walked with a limp on the right side and exhibited a significantly restricted range of motion of the lumbar spine, decreased strength and sensory loss of the right lower extremity, and was noted to have no feeling in his right thigh. Tr. 334-36. Range of motion of the cervical (neck) spine was also restricted. Tr. 336. Examination further revealed severe low back and right leg pain with straight leg raise to approximately 40 degrees on the right and palpitation of the lumbosacral (low back) area caused "exquisite pain." Tr. 334. Dr. Graham, the only examining physician in the record to provide work-related limitations, concluded as follows:

> I think it would be very difficult for [Smith] to lift or carry anything. Standing or moving about for any length of time or sitting for an 8[-]hour work day would be almost impossible. Stooping, climbing, kneeling, crawling would be difficult. . . . It would be very difficult for him to work in dust, fumes, temperature changes, and hazards. I do not have any x-rays to review[,] but I do not feel that he would be able to work. I truly believe that he is disabled.

Tr. 334.

The ALJ gave "little weight" to Dr. Graham's opinions because he found they were "not supported by the objective

7

findings or [Smith's] actual reported functioning." Tr. 26. But Dr. Graham's opinions were, in fact, supported by the objective evidence. As noted above, Dr. Graham took Smith's complete medical history and performed a full battery of physical/mechanical and neurological examinations. Then, after correlating the findings from these examinations with the history of Smith's ailment — that is, Smith's current symptoms and previous medical issues — Dr. Graham determined Smith's ability to do basic work-related activities. The conclusions reached by Dr. Graham were consistent with the objective clinical findings found on examination and on all available information, including Smith's history. Although the ALJ felt Dr. Graham's opinion was undermined by the fact that he "was not privy to all file information when he made his determination," including a subsequent X-ray of Smith's lumbar spine, the information not then available to Dr. Graham actually buttresses his overall assessment of Mr. Smith. The later X-ray confirmed disc space narrowing at L5-S1 (see Tr. 337), which was consistent with Dr. Graham's opinions, not to mention a previous Magnetic Resonance Imaging (MRI) scan that revealed "right-sided disc protrusion at L5-S1 abutting the right S1 nerve root[,] [a possible] fractured disc that migrated superiorly[,] and degenerative change at the L3-4 and

L5-S1 discs with loss of disc water."[8]  Tr. 134.  While this MRI was completed several years before Dr. Graham's evaluation and the subsequent X-ray test, it would strain credulity to say its age makes it unreliable; given his obesity and the degenerative nature of his condition, Smith's back impairment could have only gotten worse following the MRI.  Besides, MRI is more effective than X-ray at revealing soft tissue in and around the spine, making it far easier to see nerves that may

---

[8] This MRI was completed prior to the relevant time period in this case and related to Smith's prior application for benefits.  This Court is certainly not empowered to review the previous ALJ's decision of July 22, 2002 (Tr. 49-55), but the medical records from that time period are a part of the record that was considered by the second ALJ and are relevant to whether Smith was disabled during the relevant time period at issue here.  See Hillier v. Social Security Administration, 486 F.3d 359, 365 (8th Cir. 2007) ("Especially in the context of a progressive disease or degenerative condition, evidence that is offered as proof of a disability, and not found persuasive by an ALJ in a prior proceeding, may be considered in a subsequent proceeding in combination with new evidence for the purpose of determining if the claimant has become disabled since the ALJ's previous decision." (citation omitted)); see also Robbins v. Secretary of Health and Human Services, 895 F.2d 1223, 1224 (8th Cir. 1990) (citing Wilson v. Califano, 580 F.2d 208, 211 (6th Cir. 1978)); Groves v. Apfel, 148 F.3d 809, 810-11 (7th Cir. 1998) (although final judgment denying application for social security disability benefits was res judicata, this did not render evidence submitted in support of that application inadmissible, on second application alleging later onset date, to establish, in combination with later evidence, that claimant had become disabled after period covered by first proceeding) (citing Robbins, 895 F.2d at 1224; Robertson v. Sullivan, 979 F.2d 623, 625 (8th Cir. 1992)).

be impinged and bulging or herniated discs,[9] so this MRI provides a valuable glimpse into the soft tissue in Smith's spine and, in combination with the X-ray, provides ample diagnostic corroboration for Dr. Graham's opinion.

The other stated reason the ALJ gave "little weight" to Dr. Graham's opinions — that they were purportedly inconsistent with Smith's actual reported functioning — also fails to hold up under closer scrutiny.[10] From the Court's point of view upon review of the ALJ's Decision, the ALJ seemed to read and analyze the record in a selective manner. For example, the ALJ made much of a questionnaire in which

---

[9] See Brentwood Pain & Rehab. Servs., P.C. v. Allstate Ins. Co., 508 F. Supp. 2d 278, 282 (S.D.N.Y. 2007) (noting that "Bones are dense and contain calcium; they absorb X rays well[,] [whereas] [s]oft tissues-skin, fat, blood, and muscle-absorb X rays to a lesser extent," and that "MRI is preferred . . . when soft-tissue contrast resolution is important — e.g., to evaluate intracranial, spinal, or spinal cord abnormalities or to evaluate suspected musculoskeletal tumors, inflammation, trauma, or internal joint derangement."); see also http://www.spineuniverse.com/conditions/degenerative-disc/exams-tests-degenerative-disc-disease ("A Computerized Axial Tomography scan (a CT or CAT scan) or a Magnetic Resonance Imaging test (an MRI) may be required. These tests are more effective than x-rays at showing the soft tissues in your spine, and can help to identify problems such as a bulging disc or a herniated disc.").

[10] Although this seems like an odd reason to question a doctor's medical opinion, the Court will nevertheless address the examples of "actual reported functioning" listed by the ALJ to support his decision to give "little weight" to Dr. Graham's opinion.

10

Smith reported "I try to help with the outside chores," but what the ALJ failed to mention was that in that same questionnaire Smith explained "I just about can't [help with those chores] anymore[,] [j]ust in to [sic] much pain." Tr. 288.[11] The ALJ also stated that Smith "continues to enjoy horseback riding" (Tr. 26), but at most the evidence before the ALJ indicated horseback riding was a former hobby of Smith's which he had not engaged in for several years, and even then only with a "gentle horse" at a slow pace. [12] Whatever the ALJ sought to accomplish by taking these statements out of context, his reliance upon them to support his decision to give Dr. Graham's well-supported opinion

---

[11] In the questionnaire Smith further reported he did "some mowing and some outside chores . . . [b]ut it takes a long time because my back starts to lock up and [I] about fall or I do if I push it." Tr. 290. Smith also listed "mowing" and "outside work" in response to the question "[w]hat were you able to do before your illnesses, injuries, or conditions that you can't do now?" Tr. 289. The ALJ's Decision provided "[Smith] still does some mowing and is able to do some outside work" (Tr. 26), yet the decision made no mention of the other statements above that suggest Smith's attempts to help with chores were hardly indicative of an ability to work.

[12] Smith's testimony at the administrative hearing appeared to indicate he could not remember the last time he rode a horse. See Tr. 440 ("Couple years ago maybe. Got to be a real gentle horse and don't — can't run or do anything like that."); see also Tr. 289 (Smith stating "ride horse" in response to the question "[w]hat were you able to do before your illnesses, injuries, or conditions that you can't do now?") and 292 (Smith stating "I hardly ride anymore [because] my back just won't let me.").

11

"little weight" was misplaced.

So too was it error for the ALJ to rely on these and other "inconsistencies" to discredit Smith's subjective complaints and asserted limitations. For example, the ALJ cited what he described as "little recent treatment" and as proof that Smith exaggerated the effects of his conditions, yet nowhere did the ALJ mention that Smith is poor and has no health insurance (Tr. 116, 197, 249, 311, 319, 375), or that he lacks reliable transportation (Tr. 311). <u>See</u> S.S.R. 82-59 (justifiable cause for failure to follow prescribed medical treatment includes inability to pay). Moreover, none of the treating sources in the record have stated or suggested that Smith's ability to work would be restored were he to follow prescribed treatment. <u>Id.</u> The ALJ also faulted Smith for failing to "follow-up" with a cardiac stress test (Tr. 28), yet the record shows that Smith missed the test when it was originally scheduled (Tr. 384) but he did later attend the examination (Tr. 327-28). These purported "inconsistencies" do not support the ALJ's finding that Smith is not credible.

The ALJ also overlooked evidence favorable to Smith. For example, the ALJ failed to take note of the following observations by a claims representative for the Social Security Administration during a face-to-face interview:

> Sat in chair leaning over to his left side.
> Slow to get up and down in chair. Walks

> sluggishly and with a limp. Appears to be in constant pain and discomfort.

Tr. 257. At a minimum, the ALJ should have explained why these observations were rejected. <u>Willcockson v. Astrue</u>, 540 F.3d 878, 880 (8th Cir. 2008). Finally, although the ALJ acknowledged Smith's obesity and stated the general rule that, "[w]hen obesity is identified as a medically determinable impairment, consideration will be given to [any resulting] functional limitations" (Tr. 26 (citing S.S.R. 02-1p)), there is no other indication he actually considered the effects of Smith's obesity on his other severe impairments. A Body Mass Index (BMI) of 30 or greater generally indicates a claimant is obese. <u>See</u> Docket No. 10 at 18 (citing (http://www.cdc.gov/nccdphp/dnpa/bmi/index.htm). Smith's BMI has varied between 34.9 and 37.7, indicating he is significantly obese. Tr. 89, 370. Although not in itself dispositive, Smith's significant obesity provides further corroboration to his subjective allegations. <u>See</u> S.S.R. 02-1p ("The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.").

There is no substantial evidence, medical or otherwise, to support a finding that Smith is able to function in a

13

competitive work environment, regardless of the exertional level required. The clear weight of the evidence overwhelmingly points to a conclusion that Smith is disabled. Hutsell v. Massanari, 259 F.3d 707, 714 (8th Cir. 2001) ("'Where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate.'" (quoting Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984))).

### III. CONCLUSION

**IT IS THEREFORE HEREBY ORDERED**, pursuant to sentence four of 42 U.S.C. § 405(g), that the decision of the ALJ is **REVERSED**, and the Commissioner is directed to compute and award disability benefits to Smith with an onset date of October 10, 2006. The Court is persuaded that the medical evidence unequivocally indicates that by this date, Smith could not engage in competitive employment on a sustained basis. No medical evidence demonstrates subsequent improvement sufficient to enable Smith to engage in such work on a sustained basis. The Court therefore finds that, as of this date, Smith was disabled.

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if Smith's

attorney wishes to apply for EAJA fees, then he must do so within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 30th day of March, 2011.

_Donald E. O'Brien_
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa